**In re Deanna Lynn NASE, Debtor.**

**Deanna Lynn Nase, Plaintiff,**

**v.**

**GNC Community Federal Credit Union, Defendant.**

**Bankruptcy No. 02–23200 BM.**
**Adversary No. 02–2453 BM.**

United States Bankruptcy Court,
W.D. Pennsylvania.

Aug. 4, 2003.

Paul W. Johnson, New Castle, PA, for Plaintiff.

John J. Romza, Pittsburgh, PA, for Defendant.

## MEMORANDUM OPINION

BERNARD MARKOVITZ, Bankruptcy Judge.

Debtor Deanna Lynn Nase has brought this adversary action to avoid and/or recover pursuant to §§ 547(b), 553(a) and 542(a) of the Bankruptcy Code a tax refund deposited into her personal checking account at GNC Community Federal Credit Union ("GNC") which GNC applied to satisfy a past-due debt owed to it by debtor.

GNC opposes debtor's action and insists that debtor is not entitled to avoid and/or recover the funds.

We conclude that debtor cannot prevail under any of these provisions and therefore will enter judgment in favor of GNC and against debtor.

— FACTS —

Debtor, who had a personal checking account at GNC, borrowed $48,121.00 from GNC on August 7, 1998. A portion of this amount was utilized to pay a prior debt

owed to GNC. The remainder was paid to debtor directly.

Contemporaneously therewith, debtor executed a document entitled "Note and Disclosure Statement" in favor of GNC. Debtor promised to repay the debt in sixty equal installments with interest accruing on the unpaid balance at the rate of 10.5% *per annum.* To secure payment of the obligation, debtor granted GNC a security interest in, among other things, all deposits in all her accounts with GNC now or in the future.

On February 18, 2001, debtor filed a Form 1041A income tax return for tax year 2000, wherein she claimed a refund in the amount of $3,616.00. On the return she directed Internal Revenue Service ("IRS") to deposit the refund directly into her checking account at GNC.

Debtor filed a Form 1040X amended tax return on September 24, 2001. In addition to reducing the amount of the refund claimed to $2,405.00, debtor directed on the amended return as follows: "Disregard my direct deposit—please mail refund".

That same day debtor sent a fax to a specific employee of IRS stating that she had filed an amended return. She further directed that her previous instruction to directly deposit the refund into her checking account at GNC be "disregarded" and asked that it instead be mailed to her residence. Debtor evidently had an epiphany after filing the original tax return and realized that GNC would apply the full amount of the refund to her obligation under the above note. To prevent this from happening, and keep the money for herself, debtor decided that the refund should be mailed to her instead of being deposited directly into her checking account at GNC.

For some unknown reason, IRS deposited the tax refund in the amount of $2,405.00 directly into debtor's checking account at GNC on December 14, 2001, instead of mailing it to her residence.

At the time the refund was deposited into debtor's checking account, debtor owed GNC at total of $2,470.00 in past-due debts. Of this total, $2,145.00 was due and owing on debtor's obligation under the above note, on which she previously had defaulted. The remainder was owed for an NSF check charge and for past-due payments on her VISA credit card account.

GNC posted the refund to debtor's checking account that same day—i.e., December 14, 2001,—and immediately thereafter applied it to the above past-due debt. Nothing remained of the refund for debtor's use.

Debtor filed a voluntary chapter 7 petition on March 22, 2002. The tax refund was listed on the schedules as an asset of the bankruptcy estate. Determined to keep it all for herself, debtor exempted the entire amount pursuant to § 522(d)(5), the so-called "wild card" exemption. No objection was raised to debtor's claimed exemption in the tax refund. GNC was listed as having an unsecured non-priority claim in the amount of $2,700.00 for a "personal loan".

After conducting the § 341 meeting of creditors, the chapter 7 trustee reported that no estate assets were available for distribution to creditors over and above what debtor had exempted.

Debtor commenced this adversary action against GNC on July 31, 2002, seeking pursuant to § 547(b) to avoid as a preference GNC's application of her tax refund to past-due debt she owed it. She alternatively sought to recover the tax refund pursuant to § 522(h). According to debtor, the setoff GNC exercised should not be

preserved in bankruptcy in light of § 553(a)(2) of the Bankruptcy Code because it occurred within ninety days of the bankruptcy filing.

The above complaint and a summons were served on GNC on August 14, 2002. GNC answered the complaint on September 18, 2002.

On May 20, 2003, long after the time period set forth in Federal Rule of Civil Procedure 15(a) for amendment had passed and without the consent of GNC, debtor filed an amended complaint. The only change from the complaint as originally filed was a request for attorney's fees in the amount of $1,500.00. Debtor's counsel erroneously caused the amended complaint to be erroneously docketed at the main bankruptcy case instead of the adversary action. GNC brought a motion on June 12, 2003, to strike the amended complaint because debtor had neither obtained written consent from GNC nor obtained leave of court to file it. The motion was not scheduled for hearing because trial was imminent.

Trial of the adversary action took place on June 30, 2003. Upon realizing that the setoff exercised by GNC had taken place more than ninety days prior to the filing of debtor's chapter petition, debtor orally amended her complaint once again at the start of the trial to assert a turnover action pursuant to § 542(a) of the Bankruptcy Code. Although debtor and GNC were provided an opportunity to call witnesses, neither did so. They instead offered documentary evidence to which there was no objection and obviously expected the court to decide if plaintiff had proven a case on any legal theory and, if so, whether defendant had provided a valid defense.

— DISCUSSION —

**I.) Preference Action.**

Debtor originally sought in accordance with § 547(b) to avoid as a preference GNC's application of the directly deposited tax refund to the past-due amount she owed it.

Section 547(b) provides in pertinent part as follows:

(b) except as provided in subsection of this section, the trustee may avoid any transfer of an interest of the debtor in property—

(1) to or for the benefit of a creditor;

(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;

(3) made while the debtor was insolvent;

(4) made—

(A) on or within 90 days before the filing of the petition . . .;

(5) that enables such creditor to receive more than such creditor would receive if—

(A) the case were a case under chapter 7 of this title;

(B) the transfer had not been made; and

(C) such creditor received payment of such debt to the extent provided by the provisions of this title.

11 U.S.C. § 547(b).

■ The purpose of this provision is to ensure that creditors are treated equitably, both by deterring a failing debtor from giving preferential treatment to its most persistent and demanding creditors "to stave off a hard ride into bankruptcy", and by discouraging creditors from racing to the courthouse to dismantle the debtor. *Fiber Lite v. Molded Acoustical Products, Inc.(In re Molded Acoustical Products, Inc.)*, 18 F.3d 217, 219 (3d Cir.1994).

■ The burden of proving each of these requirements lies with the debtor in this case. 11 U.S.C. § 547(g). This she must do by a preponderance of the evidence. *Bohm v. Golden Knitting Mills, Inc. (In re Forman Enterprises, Inc.)*, 293 B.R. 848, 855 (Bankr.W.D.Pa.2003).

A debtor is presumed to be insolvent for purposes of § 547(b)(3) during the ninety-day period immediately preceding the filing of the bankruptcy petition. 11 U.S.C. § 547(f).

Debtor's preference avoidance action fails for a number of reasons.

■ Where a pre-petition setoff lies at the heart of a preference action, it first must be determined if the setoff was valid for purposes of § 553 of the Bankruptcy Code. Section 547(b) can apply only if the setoff was not valid for bankruptcy purposes. *Durham v. SMI Industries Corp.*, 882 F.2d 881, 882 (4th Cir.1989). As we shall see, GNC exercised a valid setoff which was preserved for bankruptcy purposes when it applied debtor's income tax refund to the past-due debt she owed it. Debtor therefore may not utilize § 547(b) to avoid this transaction.

■ The matter does not end there. Debtor cannot prevail under § 547(b) also because application of the tax refund occurred *outside* the ninety-day window prescribed at § 547(b)(4)(A). Said application occurred on December 14, 2001, ninety-eight days before debtor filed a chapter 7 petition on March 22, 2002. Debtor conceded as much at trial and for that reason sought to orally amend her complaint to state a wholly different cause of action in accordance with § 542(a) of the Bankruptcy Code.

**II.) Setoff.**

Debtor asserts that she may seek to recover the above transaction on her own pursuant to § 553 because the chapter 7 trustee could have avoided it in accordance with § 547(b) or recovered it under § 553 but elected not to do so. *See* 11 U.S.C. § 522(h).

It is far from clear which portion of § 553 debtor relies upon in seeking on her own to recover the above setoff exercised by GNC. We gather from her original (and first amended) complaint that she relies upon § 553(a), which provides in part as follows:

(a) Except as provided in this section and in sections 362 and 363 of this title, this title does not affect any right of a creditor to offset a mutual debt owing by such creditor to the debtor that arose before the commencement of the case under this title against a claim of such creditor against the debtor that arose before the commencement of the case, except to the extent that—. . . .

(2) such claim was transferred, by an entity other than the debtor, to such creditor—

(A) after the commencement of the case; or

(B)(i) after 90 days before the date of the filing of the petition; and

(ii) while the debtor was insolvent; or

(3) the debt owed to the debtor by such creditor was incurred by such creditor—

(A) after 90 days before the date of the filing of the petition;

(B) while the debtor was insolvent; and

(C) for the purpose of obtaining a right of setoff against the debtor. . . .

11 U.S.C. § 553(a).

[6] The right of setoff permits entities owing money to one another to apply these mutual debts against each other, thereby

avoiding "the absurdity of making A pay B when B owes A". *Citizens Bank of Maryland v. Strumpf,* 516 U.S. 16, 18, 116 S.Ct. 286, 289, 133 L.Ed.2d 258 (1995) *(quoting Studley v. Boylston National Bank,* 229 U.S. 523, 528, 33 S.Ct. 806, 808, 57 L.Ed. 1313 (1913)).

■ The Bankruptcy Code does not create a right of setoff. Section 553(a) provides that, with certain specified exceptions, any right of setoff otherwise existing is *preserved* in bankruptcy. *Id.*

■ A right of setoff "otherwise existing" is preserved for bankruptcy purposes pursuant to § 553(a) where: (1) a creditor holds a pre-petition claim against debtor; (2) the creditor owes a pre-petition debt to debtor; (3) the claim and the debt are mutual; and (4) the claim and the debt are valid and enforceable. *See Davidovich v. Welton (In re Davidovich),* 901 F.2d 1533, 1537 (10th Cir.1990).

■ We must look to the law of Pennsylvania to determine whether a right of setoff "otherwise exists" in this instance. *Pittsburgh National Bank v. U.S.A.,* 657 F.2d 36, 38 (1981).

Setoff is appropriate under the law of Pennsylvania in this instance only if: (1) there was mutuality of obligation between the bank and a depositor; (2) the funds against which setoff was exercised belonged to the depositor; (3) the funds were deposited with the bank into a general account; and (4) the debt owed to the bank was mature. *Pioneer Commercial Funding Corp. v. American Mortgage Corp.,* 797 A.2d 269, 282 (Pa.Super.2002).

Each of these requirements is satisfied in this case.

■ Debtor indisputably owed a pre-petition debt to GNC totaling $2,470.00. For its part, GNC also owed a pre-petition debt to debtor in the amount of $2,405.00

as the result of the direct depositing of her income tax return into her checking account at GNC. Money deposited into an account ceases to be the property of the depositor upon deposit and instead becomes the property of the bank. Thereafter the bank owes a debt to the depositor in that amount. *See In re Smith's Estate,* 141 Pa.Super. 571, 576–77 15 A.2d 523, 526 (1940). The first of the above requirements for a valid setoff, in other words, is satisfied. There was a mutuality of obligation vis-à-vis debtor and GNC.

The remaining requirements also are present in this case. The funds against which GNC exercised the right of setoff came from debtor's income tax refund and belonged to her until they were directly deposited into her checking account at GNC. Finally, the debt owed to GNC by debtor was mature when the setoff occurred. The debt was past-due. As for the promissory note debtor executed on August 7, 1998, she was in default thereof long before December 14, 2001, when GNC exercised setoff.

■ Having determined that the setoff exercised by GNC was valid and enforceable under the law of Pennsylvania, we next must determine whether it meets the above general requirements for preservation under § 553(a). We conclude that it does.

■ The first two requirements undoubtedly are satisfied. GNC's claim against debtor as well as the debt GNC owed to debtor arose prior to the filing of debtor's chapter 7 petition. A claim arises for bankruptcy purposes when the cause of action undergirding it has accrued under applicable state law. *Avellino & Bienes v. M. Frenville Co., Inc. (Matter of M. Frenville Co., Inc.),* 744 F.2d 332, 335–36 (3d Cir.1984), *cert. denied,* 469 U.S. 1160, 105 S.Ct. 911, 83 L.Ed.2d 925 (1985). GNC's

cause of action against debtor for non-payment of money due arose at some time prior to December 14, 2001. Debtor did not file her chapter 7 petition until March 22, 2002. The debt GNC owed to debt arose when her tax refund was directly deposited into her checking account at GNC of December 14, 2001.

■ Moreover, their respective obligations were mutual. Mutuality in this context requires that the debts "be in the same right between the parties, standing in the same capacity". *Darr v. Muratore*, 8 F.3d 854, 860 (1st Cir.1993). GNC and debtor, each in their own right, owed a debt to the other.

Finally, as we have seen, GNC's claim against debtor and the debt it owed to debtor unquestionably were valid and enforceable under Pennsylvania law.

There are certain enumerated exceptions to the general rule articulated at § 553(a). One such exception is found at § 553(a)(3), *supra*. Debtor indicates in paragraph 9 of her complaint (and amended complaint) that the above setoff is not preserved for bankruptcy purposes because the exception found at this provision applies in this case. This assertion is without merit.

Section 553(a)(3)(A), for instance, is not satisfied. The debt GNC owed to debtor was not incurred "after 90 days before the filing of the petition"—i.e., within ninety (or fewer) days from March 22, 2002. We previously determined that the debt arose ninety-eight days before the chapter 7 petition was filed.

■ Debtor also has not established that § 553(a)(3)(B) is satisfied. A debtor is presumed for purposes of § 553 to be insolvent on and during the ninety days immediately preceding the date on which the bankruptcy petition was filed. 11 U.S.C. § 553(g). No such presumption exists for the period outside of this ninety-day window. Debtor offered nothing that would establish that she was insolvent ninety-eight days prior to the filing of the chapter 7 petition.

Finally, debtor has not established that § 553(a)(3)(C) is satisfied. GNC did not incur the debt it owed to debtor "for the purpose of obtaining a right of setoff against" her. To the contrary, the debt was incurred as the result of a possible error by IRS in directly depositing debtor's tax refund into her checking account at GNC. GNC had nothing to do with this event. The debt it owed to debtor was incurred by operation of law when the direct deposit occurred.

■ The matter does not end there. Debtor asserted at trial that the setoff should not be allowed for yet another reason. According to debtor, the tax refund belonged to her and should not have been deposited into her account at GNC. Moreover, she did not consent to GNC's application of the funds to the past-due debt she owed it.

This assertion lacks merit. It does not follow that GNC should not be permitted to exercise setoff in this context.

Debtor has cited to no judicial authority in support of her position. When pressed on the matter at trial, counsel to debtor conceded that he had searched for such authority but found none.

The requirements governing preservation of a setoff in bankruptcy are cast in terms of mutual pre-petition debts a creditor and a debtor owe to one another. No reference is made in § 553 to whether application of the one to the other was consensual or not. The fact that GNC's application of the debt it owed to debtor to the debt owed to it by debtor was non-consensual has no bearing on whether a

setoff should be preserved in bankruptcy. It is not relevant.

 Preservation of a setoff under § 553 is equitable in nature. The provision is permissive rather than mandatory. *Matter of Bevill, Bresler & Schulman Asset Management Corp.*, 896 F.2d 54, 57 (3d Cir.1990). Equity dictates that we should exercise our discretion and permit the setoff GNC exercised.

GNC had nothing to do with the depositing of debtor's tax refund into her checking account at GNC. IRS was responsible for directly depositing it into her checking account. GNC was not responsible. The resulting debt GNC owed to debtor arose by operation of law once the refund was deposited into debtor's account. At that point the funds became the property of GNC, not debtor.

Disallowance of the setoff would, in our estimation, be inequitable in light of the following circumstances. Debtor undeniably owed a past-due debt to GNC prior to the direct deposit. Moreover, debtor has taken an exemption in the tax return which must be allowed because no timely objection thereto was raised. The chapter 7 trustee has determined that this is a no-asset case. If the setoff is disallowed, debtor will get to keep the refund for herself. For its part, GNC will have to turn the refund over to the chapter 7 trustee for distribution to debtor and will receive nothing by way of distribution. In our estimation, such an outcome should not be condoned by this court.

**III.) Turnover.**

Recognizing that the setoff at issue occurred more than ninety days prior to the filing of her bankruptcy petition, debtor announced at the beginning of the trial of this adversary action that she wished to amend her complaint yet another time to

assert a turnover action pursuant to 11 U.S.C. § 542(a), which provides as follows:

(a) Except as provided in subsection (c) and (d) of this section, an entity, other than a custodian, in possession, custody, or control, during the case, of property that the trustee may use, sell, or lease under section 363 of this title, or that the debtor may exempt under section 522 of this title, shall deliver to the trustee, and account for, such property or the value of such property, unless such property is of inconsequential value or benefit to the estate.

GNC, which had no forewarning that debtor would seek at trial to amend her complaint to assert a turnover action, did not consent to the motion. GNC arguably would be prejudiced if the amendment were allowed. We need not, however, decide whether to allow debtor to amend the complaint. Debtor cannot prevail under § 542(a) even if the amendment is allowed.

 Except for those exceptions specifically enumerated in § 553, a setoff cannot be negated by another provision of the Bankruptcy Code. *In re Morgan*, 77 B.R. 81, 85 (Bankr.S.D.Miss.1987); *Matter of Ford*, 35 B.R. 277, 279 (Bankr.N.D.Ga. 1983); *Slaw Construction Corp. v. Hughes Foulkrod Construction Co.*, 17 B.R. 744, 748 (Bankr.E.D.Pa.1982).

 None of the exceptions found at §§ 553(a)(1) through (a)(3) or § 553(b) apply to this case. The only other exceptions enumerated in § 553 are §§ 362 and 363 of the Bankruptcy Code. Section 542 is not listed as an exception and, consequently, is "trumped" by § 553.

 There is yet another reason why debtor's turnover action cannot succeed. Debtor has claimed an exemption in the entire amount, which exemption must be allowed because no timely objection thereto was raised. *See Taylor v. Free-*

*land & Kronz,* 503 U.S. 638, 638–39 112 S.Ct. 1644, 1645–46, 118 L.Ed.2d 280 (1992). As a consequence, said refund is of no value or benefit to debtor's estate.

We conclude in light of the foregoing that debtor cannot prevail even if debtor's oral amendment of the complaint at trial is permitted.

An appropriate order shall issue.

### ORDER OF COURT

**AND NOW,** at Pittsburgh this *4th* day of *August,* 2003, in accordance with the accompanying memorandum opinion, it hereby is **ORDERED, ADJUDGED,** and **DECREED** that judgment be entered **IN FAVOR OF** defendant GNC Community Federal Credit Union and **AGAINST** debtor Deanna Lynn Nase.

It is **SO ORDERED.**